JUAN COLOM SOTO, Appellant, *v.* REGISTRAR OF PROPERTY OF MAYAGÜEZ, Respondent.

No. 935. Argued November 14, 1934.—Decided January 18, 1935.

*José Sabater* for appellant. The Registrar did not appear.

MR. JUSTICE WOLF delivered the opinion of the Court.

Juan Colom Soto, the appellant, is the owner of a piece of farm property in the district of Mayagüez, where coffee is cultivated. It was acquired on the 29th of April, 1933.

Previously, Sebastián Colom Soto was the owner, and recorded a refaction contract, in which he recited that he received from Juan Arbona & Hermano the sum of $1,785 and agreed to pay the said firm $446.25 with interest on the 30 of November, 1929, and three other similar amounts under like conditions, on the 30th of November, 1930, 1931 and 1932, respectively. The agreement contained a clause whereby the capital and interest should be paid in coffee produced on the property from the harvests of 1929, 1930, 1931 and 1932. No extension of this contract was made between the parties and no further record was made in the registry of property. On the 21st of September, 1934, Juan Colom Soto made an application to have the annotation of the refaction contract cancelled. The registrar denied the cancellation in the following note:

"Cancellation is refused of the agricultural refaction contract referred to in the above instrument, affidavit No. 696, subscribed in Mayagüez on September 21 last, before notary José Sabater, by Juan Colom Soto, of age and married to Angelina Delgado Cabán, a farmer and resident of Lares, the present owner of the farm encumbered by the said refaction lien; and in lieu thereof the proper

cautionary notice has been entered for 120 days for all legal purposes in favor of the sa'd interested party Colom Soto, the refusal being made on the following grounds: Because according to deed No. 245, executed in Mayagüez on August 14, 1929, before notary Oscar Souffront, which gave rise to the entry of the said contract on folio 122 of volume 2 of Agricultural Contracts for Las Marías, property No. 57 duplicate, entry letter G, dated August 15, 1929, the said refaction contract was entered into for a certain term. This included the coffee crops from said property for the years 1929, 1930, 1931 and 1932, to be credited at the market price then prevailing, A LIEN BEING CONSTITUTED ON ALL COFFEE CROPS from the same farm during the said years and successive years after the said contract. All the fruits given as security for the said refaction contract, in the sum of $1,785 as stated in said affidavit, requiring therefore the consent of the firm of 'J. Arbona Bros.' as refactionary creditors in the amount referred to in the said instrument, if it is considered, as it should be considered, that the parties by means of a licit contract broadened it to the extent of establishing liens on successive crops after November 30, 1932, as per note in the margin of entry letter G of property No. 57, duplicate, on folio 122 of vol. 2 of Agricultural Contracts for Las Marías.—Mayagüez, October 26, 1934.''

 Section 4 of ''An act to provide for contracts of advances for agricultural purposes and grinding of cane, and for other purposes,'' as amended by Act No. 66 of August 1, 1925, page 348, provides:

''As regards the products which are the object of the lien, the crop loan cred't, from the date it is filed in the registry hereinafter provided, shall have preference over other subsequent credits of any kind during the years stipulated in the contract, and in all cases, until the creditor is fully reimbursed the amount of his credit, except the tax lien in favor of The People of Porto Rico, as provided by law.

''Where the creditor has not been fully paid the amount of his credit dur'ng the term of the contract, it shall be the duty of such creditor to enter into a contract for the extension of such term with the debtor, or to bring suit as provided in Section 9 hereof, within s'x months after the expiration of the contract.

''Pursuant to the provisions of Section 290 of the Civil Code, the purchaser of property at public auction, the crops on which property are encumbered by a crop lien entered in the Registry of Property or

in the spec'al registry provided by this Act, whether such auction is the outcome of an ordinary action or of an action to recover a mortgage credit registered subsequently to the crop loan or prior thereto, but constituted after this Act takes effect, shall choose between allowing the crop creditor, or the first crop creditor where there are several, to harvest and rece've such pending crops as are subject to the lien and fully to cultivate and prepare for the harvest, and paying said crop creditor the assessed value of the crop at the time such purchaser takes possession of them, to the amount of the crop lien, though not exceeding the sum stated in the register. In the latter case, an assessment shall be made as in the case of an execution of a judgment of unlawful detainer against a defendant claiming improvements, labor and crops.

"A crop creditor receiving such crops shall render account to the debtor; shall credit the latter with the liqu'd proceeds obtained, or such part of such liquid proceeds as may be necessary, and shall deliver the remainder, if any, to subsequent crop creditors, to the debtor or to the purchaser, as the case may be and as the court may determine. The court taking cognizance in the proceedings giving origin to the auction sale, shall be competent to take cognizance of said incidental proceedings, as regards the execution of such judgment as may be rendered in said proceedings."

Likewise the legislature had passed an act on the 30th of April, 1927, (Session Laws, p. 204) wherein, among other things, it was provided that:

"Six months after the maturity of a contract, or at the expiration of the lapse of time for which the records thereof may have been extended pursuant to order of a court, all of its legal effects shall cease, and it shall be the duty of the respective registrar of property officially to make entry of cancellation, and he shall then destroy all of the records connected w'th such expired entries."

The appellant argues that the maturity of this contract took place on the 30th of November, 1932, and that as no extension of the contract was recorded he was entitled to the cancellation sought. He contends that the words "a lien being constituted on all coffee crops from the same farm during the said years and successive years after the said contract," or more specially, the words "and successive years after said

contract" could not be interpreted as extending the term of the contract. It strikes us, however, as it did the registrar, that the parties deliberately bound the property for the years succeeding 1932, whatever the word *"sucesivos"* may mean. Anybody going to the registry with the intent of purchasing the property would know that the parties had in mind the further cultivation of coffee during the years that follow. To our minds it makes no difference that the contract would be indefinitely extended if the parties so expressed their intention.

The appellant also maintains that the contract was valid between the original parties, but that he is a third person and could not be affected by some understanding between the parties; in effect that he had a right to conclude, six months after November 30, 1932, that the money owing under the refaction contract had been settled or paid. If he admits that the original contract was a valid one, the knowledge of the agreed extension was spread before him in the registry of property.

Given the antecedents under any conceivable circumstances, Juan Colom Soto, we think, would have been bound to inquire whether the debt in this particular instance had not been paid and hence that he could not be considered a third person.

There is some argument in the brief of the appellant to the effect that if he had acquired the property in November of 1932 or within six months thereafter, he might have been bound to respect the existing contract, but not otherwise. This is a matter that we do not fully understand. He acquired the property on the 29th of April, 1933, the refaction contract was recorded in November of 1932, so that his purchase was only made five months after the record in 1932. If we are not mistaken in this, then the appellant took the property while it was still subject to the lien of the refaction contract under any conceivable circumstances.

The note of the registrar should be affirmed.